## MENARD v. DAVIDSON.

Where the directors of a bank, in consequence of a private loss sustained by their cashier, make him a payment of his salary for six months in advance, and he afterwards pays himself a second time, by monthly instalments for the same period, the surety on his official bond, who had bound himself for the faithful performance of his duties by the cashier, and to save the bank harmless from any negligence or misconduct of his, and that the latter should render a faithful account of all moneys and effects committed to his charge, will be bound for the deficiency. Such an advance of salary cannot release the surety.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *T. G. Morgan,* for the appellant. *Benjamin* and *Micou,* for the defendant. The judgment of the court was pronounced by

EUSTIS, C. J. *Davidson* was the cashier of the branch of the Carrollton Bank at Baton Rouge, and *McNeill* was his surety. The breach in the condition of the bank assigned is, the appropriation of a sum of money by *Davidson* to his own use, for which *McNeill* is sought to be made liable in this suit. There was an assignment made of the right of the bank in this claim to the plaintiff, the validity of which has not been contested. Judgment was rendered in favor of *McNeill,* and the plaintiff has appealed.

Under a resolution of the directors of the branch, of the 23d of November, 1841, the cashier was authorized to draw his salary for four months in advance, on paying interest; and by a resolution of the 13th of April, 1842, he was authorized to draw his salary in advance for six months, by paying the usual interest; and, in case of approval by the mother-bank, should it be required;

and it is added in the latter resolution, of which the cashier was the recording scribe, that *Mr. Davidson* offered to give ample security *for said loan.*

The deficit in this case arises from *Davidson's* having received his salary twice, once under the above resolutions in advance, and afterwards in the regular monthly installments. The defence is that, the surety is not liable for the amount, it having been loaned; and that the advance of the salary to the cashier was a violation of the conditions of the suretyship, and that he was thereby discharged.

The salary, its amount, and mode of payment, do not appear by the bond to have formed a constituent part of the contract. It is not mentioned. The condition is, for the faithful performance of his duties by *Davidson*, and that he should render a faithful account of all moneys and effects committed to his charge, and should save the bank harmless from, or on account of, any negligence or misconduct. To this point no authority has been adduced, and we cannot say that the increase or diminution of the salary of an officer, or an advance or delay in the payment of it, releases his sureties. None of these cases can be distinguished in principle; and if in one the surety is released by the act, he would be equally so in the others.

It is clear that a surety is not bound for loans, or ordinary debts, contracted by the cashier with the bank, and for which he becomes its debtor in the course of business. But we can find no grounds whatever for treating the defalcation under consideration, as a debt of that character. The term *loan* used, as it stands in the resolution, does not control the whole import created by the other terms employed. The cashier was authorized to draw his salary for six months in advance, in consequence of his having sustained loss by a fire, he to pay the usual interest. The advance was evidently to be extinguished by his salary as it was earned, and it was in that sense that the pretentions afterwads set up by the cashier, to consider the advance as an ordinary loan, received the rebuke of the directors of the mother-bank. "Your letter," says the cashier of the institution, "of the 14th instant, has been submitted to our direction, *and more than surprize* has been created, with the construction you would place on the resolutions of the board of your branch relative to the advance of salary allowed. Neither the letter nor spirit of those resolutions justify your position ; the very fact of your not having credited the interest is further evidence, &c." And what explanation is given of this omission to credit the interest? And if the transaction was a loan merely, which made the cashier an ordinary debtor to the bank, with the privilege of renewing under the usual curtailment of ten per cent, as contended for by him in his letter, which produced the reply just given, how does it happen, that he who was bound faithfully to enter all transactions of the bank under their appropriate head and in their proper place, never entered this in the loan or discount line? It was charged to suspense account, indicating thereby that it was in *suspense*, and the very reverse of what he pretended it was. No entry is made of either curtailment or interest, according to the conditions of the pretended loan; but he regularly took the whole amount of his salary at the expiration of each month, and charged it to contingent expenses without any deduction. *Res ipsa loquitur.* We think there is nothing in this defence, and that the judgment appealed from ought to be set aside, notwithstanding the verdict of the jury in the court below.

It is, therefore, ordered, that the judgment appealed from be reversed, and that the plaintiff recover from the defendant, *S. D. McNeill*, the sum of $1,559 52, with interst from judicial demand, and costs in both courts.